```
                    UNITED STATES DISTRICT COURT

               FOR THE EASTERN DISTRICT OF WISCONSIN
---------------------------------------------------------------
 UNITED STATES OF AMERICA,           )
                                     )
                     Plaintiff,      )     Case No. 21-CR-223
                                     )
      vs.                            )     Milwaukee, Wisconsin
                                     )
 VICTOR COBIAN,                      )     January 7, 2025
                                     )     9:02 a.m.
                     Defendant.      )
                                     )
---------------------------------------------------------------
```

**TRANSCRIPT OF SENTENCING HEARING**
BEFORE THE HONORABLE BRETT H LUDWIG
UNITED STATES DISTRICT JUDGE

APPEARANCES:

```
 For the Plaintiff
 UNITED STATES OF AMERICA:     United States Department of
                               Justice
                               By: Christopher Ladwig
                               517 E Wisconson Ave - Rm 530
                               Milwaukee, WI 53202
                               Ph: 414-297-4103
                               Fax: 414-297-1738
                               christopher.ladwig@usdoj.gov
 For the Defendant
 VICTOR COBIAN:                Terscham Steinle Hodan & Granzer
 (Present)                     Ltd
                               By: Michael J Steinle
                               309 N Water St - Ste 215
                               Milwaukee, WI 53202
                               Ph: 414-258-6200
                               Fax: 414-258-8080
                               Mjs@tshglaw.com


 U.S. Probation Office:        Nicole Ford


 U.S. Official Reporter:       SUSAN ARMBRUSTER, RPR, RMR, FCRR
 Transcript Orders:            Susan_Armbruster@wied.uscourts.gov
```

Proceedings recorded by computerized stenography,
transcript produced by computer aided transcription.

1          P R O C E E D I N G S

2          THE CLERK:  The Court calls Case No. 21-CR-223, United

3    States of America v. Victor Cobian.  Appearances please starting

4    with the Government.

5          MR. LADWIG:  Christopher Ladwig for the United States.

6    Good morning.

7          PROBATION AGENT:  Good morning, Your Honor.  Nicole

8    Ford with Probation and Pretrial Services.

9          MR. STEINLE:  Mr. Cobian appears in person with

10   Attorney Michael Steinle.

11         THE COURT:  So good morning, everyone.  We are here

12   this morning for a sentencing hearing.  By way of background,

13   the defendant was initially charged in a 25-count indictment

14   that was filed on November 2nd of 2021, so more than three years

15   ago.

16         Mr. Cobian was charged in I think 18 of the 25 counts

17   along with seven co-defendants.  The charges all relate to a

18   conspiracy to illegally purchase and export firearms that

19   ultimately ended up with a Mexican drug cartel.

20         We have had a number of proceedings over the years.

21   Mr. Cobian entered a not guilty plea on March 7th of 2022, was

22   released on bond.  And then for the last two and-a-half years,

23   as I said, we've had a number of status conferences and other

24   proceedings.

25         Ultimately, we set a jury trial to begin September of

1    last year.  But just before the trial on August 26th, the

2    Government filed a plea agreement in which Mr. Cobian agreed to

3    plead guilty to Counts 1, 14 and 15 of the indictment.  The

4    Government has agreed to dismiss the remaining counts, Counts 2,

5    10 through 13 and 16 through 25 at sentencing.

6            The plea agreement was a Federal Criminal Procedure

7    11(c)(1)(C) Agreement under which the parties agreed to

8    recommend a term of 42 months in prison followed by three years

9    on supervised release as the appropriate sentence for Mr. Cobian

10   for these three offenses.

11           We had a change of plea hearing on September 4th.

12   Mr. Cobian entered and the Court accepted his guilty pleas

13   pursuant to the plea agreement.  The Court deferred actual

14   approval of the plea agreement, as allowed under the rule,

15   pending receipt and review of the final Presentence Report.

16           We set sentencing for today.  On December 31st,

17   probation filed a Presentence Report and sealed sentencing

18   recommendation.  The Presentence Report included a number of

19   letters of support from friends and relatives of Mr. Cobian.

20   That is the status of things as far as the Court is aware.  Are

21   there any corrections or updates from the parties?

22           MR. LADWIG:  No.  Thank you.

23           MR. STEINLE:  No, Judge.  We've worked those out prior

24   to the last --  I mean prior to this report that you have.

25           THE COURT:  All right.  So in preparation for today's

1    sentencing, I did go back and review the indictment, the plea

2    agreement, the Presentence Report, sentencing recommendation,

3    letters of support.  Are there any other materials or

4    information that I should review or be aware of before we

5    proceed?

6            MR. LADWIG:  No.

7            MR. STEINLE:  No, Judge.

8            THE COURT:  So having reviewed the Presentence Report,

9    the Court will approve the plea agreement, including the party's

10   binding recommendation of a sentence of 42 months imprisonment

11   plus three years of supervised release.

12           We still need to go through and calculate the

13   sentencing guidelines and follow sentencing process, but I

14   wanted to let you know that I am approving the agreement.

15           According to probation, the statutory maximum

16   sentences for the three offenses of conviction are five years

17   imprisonment on Count 1, ten years imprisonment on Count 14, and

18   20 years imprisonment on Count 15 all to be followed by up to

19   three years of supervised release.

20           According to the probation, the final offense level

21   under the sentencing guidelines is 25.  That's based on a base

22   offense level of 12 for Count 1, a four-point increase given the

23   number of firearms involved under 2K2.1(b)(1)(B), a five-point

24   increase under 2K2.1(b)(5)(C)(iii) for engaging in firearms

25   trafficking, a four-point increase under 2K2.1(b)(6)(A) and (B)

1    because the defendant possessed a firearm with knowledge it

2    would be transported outside the United States and for using,

3    possessing a firearm in connection with another felony offense,

4    possessing transferring a firearm with knowledge the firearm

5    would be used or possessed in connection with another felony

6    offense.  So that results in an adjusted offense level of 25 on

7    Count 1.

8         With respect to Counts 14 and 15, probation calculates

9    a base offense level of 26 under guideline 2M5.2(a)(1).

10   Pursuant to the multi-count adjustment process required under

11   the sentencing guidelines, probation calculates another two

12   points should be added under 3D1.4 resulting in a combined

13   offense level of 28.

14        Probation then calculates a two-point decrease for

15   acceptance of responsibility under 3E1.1(a).  And in the plea

16   agreement, the Government had agreed to a one point --  to move

17   for another one-point deduction for timely guilty plea under

18   3E1.1(b).  Mr. Ladwig, does the Government so move?

19        MR. LADWIG:  Yes.

20        THE COURT:  Motion is granted.  So 28 minus three

21   results in a final offense level of 25.  Probation calculates

22   Mr. Cobian's Criminal History Category is Category I.

23   Mr. Ladwig, is the Government in agreement with the factual

24   statements and guideline calculations in the Presentence Report?

25        MR. LADWIG:  Yes.

1          THE COURT:  Okay.  Mr. Steinle, please confirm that

2   you've reviewed the Presentence Report with Mr. Cobian.

3          MR. STEINLE:  I have, Judge, several times, and we're

4   also in agreement.

5          THE COURT:  So the defense has no objections to the

6   factual statements or guideline calculations in the PSR?

7          MR. STEINLE:  That's correct.

8          THE COURT:  The Court will then adopt the Presentence

9   Report without objection.  The Court concludes that for

10  guideline purposes, the final offense level is 25, Criminal

11  History Category is I.  This results in a recommended sentence

12  of 63 to 78 months in prison, one to three years of supervised

13  release, a fine of between $25,000 and $250,000, and a mandatory

14  special assessment of $100 per count or $300.

15         Any objections to any of those findings for the

16  record?

17         MR. LADWIG:  No.  Thank you.

18         MR. STEINLE:  No Judge.

19         THE COURT:  All right.  So let's turn then to the

20  appropriate sentence here.  I know the parties have agreed and

21  the Court has approved a sentence of 42 months incarceration

22  plus three years of supervised release.  It would be helpful for

23  the Court if the parties could explain their rationale for why

24  the sentence is consistent with the requirements in the

25  sentencing statute.

6

1           MR. LADWIG:  Thank you.  Your Honor, first looking at
2     the facts of this case.  The Court is well aware of the facts
3     after several years and headed towards trial, so I won't go into
4     great detail, but I'll highlight the points that are important
5     to this defendant.
6           The defendant was not a leader in this scheme.  He
7     became involved in the firearms smuggling conspiracy when asked.
8     He communicated independently and directly with our Mexican
9     national, who is the organizer of the scheme, and this defendant
10     assisted with furthering this conspiracy.
11           The defendant was connected to Dejan Zoric, who was
12     sentenced in this court, who was part of the Las Vegas portion
13     of this case.  The Court is again aware of that part of the
14     case, and the Las Vegas conspiracy was prosecuted in that
15     district.
16           In the Milwaukee case, Victor Cobian, and other
17     co-conspirators, purchased high-powered firearms with the intent
18     of transferring those firearms to co-conspirators in Las Vegas
19     and California, who eventually got those firearms into Mexico.
20           The dangers of the activity are apparent.  The
21     purchasing of high-powered firearms to get across an
22     international border are serious, dangerous.  They are dangerous
23     not only to the smugglers themselves but law enforcement, border
24     agents and, of course, as the Court knows, people that are in
25     Mexico.

1        As to the defendant's character.  He does have a

2    criminal record that includes disorderly conduct, theft,

3    battery, a concealed --  concealing a weapon, but those are

4    quite dated with his last conviction being in 2011.

5        He had a good childhood, has a wife and a daughter,

6    which clearly comes through the PSR that he cares about and is

7    very concerned with.  That is, obviously, to his credit.  No

8    clear mental health or drug or any kind of substance-abuse

9    issues that appear to be a need for sentencing.

10        He has a very good work history.  And given the many

11    positives of his home life and work history, it is hard to

12    understand why this criminal activity became a real option for

13    him.  It was a family affair as this Court is aware, but the

14    defendant --  This particular defendant had little reason to get

15    involved with this activity.  Given his work history, given his

16    family life, it was not a very good choice, and that's why I

17    believe he pled guilty and understands the gravity of the

18    situation and the mistake that he made.

19        As to public safety.  The public is at risk when we

20    have this type of activity occurring in our country and in

21    others.  Although the defendant is not a main organizer, he was

22    involved in this activity.  So to deter him and others, we

23    believe this is an appropriate sentence even for someone who is

24    not an organizer of this activity.  A 42-month sentence is

25    appropriate and does send the current message that this type of

1    conspiracy cannot be tolerated.   Thank you.

2              THE COURT:  Thank you.  Mr. Steinle.

3              MR. STEINLE:   Judge, a lot of what the Government said

4    is I don't mean to be repetitive with regard to it, but with

5    regard to, if you will, the Government's highlights of this case

6    is although he was not an organizer, a leader of this

7    organization Judge, is that we always felt as the defense is

8    that Mr. Victor Cobian was the center, if you will, of the

9    Government's case here.

10             The reality is he was dragged into it by his cousins

11   who, obviously, cooperated against him as you know from

12   sentencing the other people.  And unfortunately out of

13   everybody, he ends up honestly with the harshest of sentences

14   even though, if you will, he is not a leader or organizer.

15             He's drawn into it basically because his cousins

16   recruited he and his sister to get involved and buy some guns.

17   And then obviously, he does involve himself.  So he's not not

18   accepting responsibility.  He does accept responsibility.  But

19   Judge, this is a case where when we set it for trial and things

20   that were coming out in the discovery were just not true, and I

21   think we were able to resolve that with the Government as to

22   what is true and what is not true as to what his cousins said

23   about him in this given case.

24             In my opinion, Judge, he's been the personification of

25   acceptance.  This case, as you know, has been going on for three

1    years.  He has not had one violation in three years, and that's

2    what we except of people on bail.  We expect that.  But you and

3    I know, we've been in this business way too long to know people

4    screw up, and it happens quite often in these types of cases

5    because of the type of people that we deal with in these

6    situations.

7            He has not had one violation whatsoever, and I can

8    tell the Court that even long before this case was indicted, I

9    had many conversations with the Government for three years prior

10   to the indictment even saying that, in fact, if and when the

11   grand jury does indictment Mr. Cobian, that, in fact, he'll

12   voluntarily surrender.  You don't have to go out and arrest him.

13   That did, in fact, happen, and we were able to work that out.

14           Not only is the three years on bail I can tell the

15   Court going back six years that I've been dealing with this

16   case, Judge, he's had no violations at all.  And I think that

17   that goes and proves to the Court that, in fact, although he did

18   wrong and although he violated the law, Judge, he can be

19   law-abiding citizen and will be a law-abiding citizen in the

20   future, Judge.

21           As you can see from the indictment, Judge, itself is

22   that his mother and father were immigrants from Mexico, very

23   hard working, prosocial family.  Unfortunately, Judge, they are

24   from a town that the cartel runs down there.  They control, the

25   cartel.  If you don't go along with the cartel in that small

1    town, obviously, you're run out of town, and they still own land

2    down there.  That's the problem that he had that once he bought

3    the first gun here, Judge, he was sucked in, absolutely sucked

4    in through the cousins themselves.

5        Judge, as far as his adult life, I represented him in

6    that 2011-case.  I can tell the Court that's 14 years ago, so I

7    go back three years, six years, now 14 years.  He's been a very

8    prosocial, hard-working individual.  As indicated, he's in the

9    pipe fitters union, Judge.  He's working for Northern Pipe

10   Construction making $50 an hour.  I only say that, Judge,

11   because again, you don't see a lot of people with his financial

12   income and financial situations in Presentence Reports like

13   this, but I am urging the Court not to fine him in this case,

14   Judge, because it's just going to set him back.

15       You can see that he, obviously, still has a mortgage

16   against the house, that he has debts, Judge, that have to be

17   paid off.  At the end of the day, you're going to leave,

18   obviously, his wife and child with nothing if you continue just

19   to take money from him when he doesn't have the income, so I'm

20   urging the Court not to fine him, allow him, obviously, to get

21   out with some assets and build his life back in a prosocial

22   manner, Judge, rather than fine him.

23       He is going to be away from his family for a

24   substantial amount of time.  And as indicated, he is extremely,

25   extremely close to his daughter.

1        So that being said, Judge, is that this is a person

2   that doesn't need, despite the fact of the agreement, he doesn't

3   need a lot of supervised release.  He's proven that, in fact, he

4   is a very prosocial person.  I can tell the Court that everybody

5   sitting in the Court or the Fazzari brothers that wrote to you

6   in your letter, he surrounds himself with nothing but prosocial,

7   stable people, and that's what his life is about.  That's who

8   his companions are at this point, Judge.

9        So his involvement in this case, Judge, was not

10   sophisticated.  It was stupid, plain and simple stupid, that he

11   got sucked in by his own family in this case.  I'm here to tell

12   you, Judge, that he can conform his conduct to the requirements

13   of the law going forward.  He has the capacity to be a

14   law-abiding citizen.  He has the motivation.  Clearly, he has

15   the intelligence despite the fact that he doesn't have the high

16   school diploma, Judge.  He is a very, very smart individual that

17   I've gotten to know over the last six years.  He just needs to

18   stay away from the negative influences, which is his own cousins

19   in this case, and move on with his life and leave that part of

20   the family alone.

21        So he's made a conscious effort, Judge, to turn his

22   life around.  He has done that.  He's proven that over the last

23   six years.  I'm just asking you not to give undeserved

24   punishment to some well-deserved punishment in this case.

25        I would also ask the Judge to allow voluntary

1    surrender.  I don't think that that is going to be objected to

2    by the Government and give him at least 60 days to get his

3    affairs in order.  Thank you.  I forget also a placement as

4    closest to home as possible.  I know you can't designate or they

5    won't follow your recommendation anyway, but I think you can

6    recommend that he be placed as close to home as possible, which

7    I would ask for.

8         THE COURT:  Thank you.  So Mr. Cobian, we're now at

9    the point in this case and this hearing where you have the

10   opportunity to speak to the Court and present any information or

11   to make any statement you'd like to make before I impose a

12   sentence upon you.  To be clear, you don't have to say anything

13   if you don't want to.  But if there's something you'd like me to

14   hear, now is the time.

15        DEFENDANT:  I'd like to.  I'd like to apologize to the

16   courts for something so dumb, decision I made.  I'd like to

17   apologize to my wife and my daughter who this is going to hurt.

18   For the people that showed up, thanks for showing up.  I'd like

19   to thank my attorney for not leaving me behind in this whole

20   case.

21        So my daughter is going to affect the most.  I really

22   want to apologize to her, and I want to apologize to the

23   Government for wasting your time on me.

24        And then personally, I'd like to apologize to who I

25   have known as Chris and Phil for the last six years for being a

1    thorn in their sides for the last six years and completely

2    making this for what it is today.  I can't do nothing but

3    apologize to everybody.  I can't change it.

4            THE COURT:  Anything further from anyone?

5            MR. LADWIG:  No.  Thank you.

6            THE COURT:  All right.  So Mr. Cobian, the law now

7    requires me to impose a sentence upon you for the three offenses

8    for which you've been convicted.

9            In doing so, I am required to take into account

10   certain factors that are identified in the statute, take those

11   factors into account as a whole and to impose a just sentence, a

12   fair sentence, one that is sufficient but not greater than

13   necessary to accomplish certain goals.

14           The statute instructs me to first take into account

15   the nature and circumstances of the offenses that you've been

16   convicted of.  And here we've got some very serious offenses,

17   some very serious crimes that you became involved in.  I don't

18   need to dwell on this.  It is hard to overstate.

19           You got involved in a group of people that were

20   purchasing high-powered rifles illegally, transporting them

21   across the United States, and then smuggling them into Mexico

22   for use by a criminal Mexican drug cartel.

23           That's --  That's serious.  There's no way to spin

24   that in any other way.  One of the weapons -- I'm not sure it is

25   a weapon that you were involved with, but one of the weapons

1    that was -- that is tied to this conspiracy ended up in the

2    possession of the cartel and then was seized after that cartel

3    attempted to assassinate a Mexican government official.

4         Of the crimes that this Court sees, this is very close

5    to the top. The Court appreciates that you were not the leader

6    or organizer of this whole enterprise. Obviously, we would be

7    looking at a much different situation if that were the case, but

8    you did become involved directly. I appreciate the fact that

9    you were brought into it by some relatives, but you made the

10   decision to get involved in response to those recruitment

11   efforts.

12        And you said it was dumb. Your counsel said it was

13   stupid. I think we can all agree that that was really a bad

14   decision, and you're going to pay the price for that. The

15   statute also tells me to take into account the history and

16   characteristics of you as the defendant. This is -- You

17   present a very different profile than most defendants in my

18   court.

19        The Presentence Report paints a picture of a positive

20   childhood, two hard-working parents, pretty solid family

21   background. I understand you lost your father to cancer a few

22   years ago but raised it appears the right way, not to do things

23   like this.

24        I always look at a defendant's educational background,

25   and I know you left high school early. But from the rest of the

15

1   record, it's clear that you're intelligent and skilled.  Your

2   comments here today show you are articulate, a smart man.

3   You've got a very good work history, solid history of

4   employment, good job which does make it surprising that you got

5   yourself involved in this.  This wasn't a situation where you

6   needed the money and stretched to have a little extra.  This is

7   really just a really bad decision that you unnecessarily got

8   yourself involved in a very, very serious criminal undertaking.

9           The Presentence Report does show a number of

10  interactions with the criminal justice system.  They are dated.

11  A lot of the incidents appear to have happened when you were

12  younger sort of growing up.  It appears that you've aged out of

13  most of that except for this latest, you know, bad --  this

14  latest bad choice you made.

15          Often times in the Presentence Report I see a

16  defendant with a serious addiction problem.  Again, that doesn't

17  seem to be the issue here.  That doesn't even seem to be a

18  factor, but I have to take all of that into account.

19          Against that background, there are lots of reasons to

20  be optimistic for your future.  You have accepted

21  responsibility.  I think your acceptance of responsibility has

22  been sincere.  Your comments here today underscore that.

23          You've performed well on bond.  We've had no

24  violations.  Counsel reports that even in the years prior to

25  your indictment, you were keeping your nose clean.  We haven't

1    seen any criminal violations.  That's good.  Again, that gives

2    me reason for optimism.

3         You've got a lot of support here.  That's always good

4    to see.  By all accounts, you are a hard working, prosocial

5    person who's made a very, very bad mistake.

6         So against that background, I need to impose a

7    sentence that accomplishes four purposes.  First, the sentence

8    needs to reflect the seriousness of the offenses you've

9    committed.  It needs to promote respect for the law and provide

10   just punishment.

11        This is the first purpose set forth in the sentencing

12   statute, and I think it is the most important one.  It is the

13   reason we have criminal law.  We have rules that guide ourselves

14   in society as a community.  And when you violate those rules,

15   there have to be consequences.  When you violate those rules and

16   you're found to have violated them, the Government prosecutes

17   you.  You come before me if you're convicted.  I have to

18   sentence you and impose some consequences for breaking the law.

19        Here as I said, you got yourself involved in buying

20   some extremely dangerous weapons, having them shipped across to

21   a Mexican drug cartel.  Again, I realize you're not the leader

22   here, but this is a very serious situation you got yourself

23   involved in.

24        We are all lucky and you are lucky that the guns that

25   you were involved in didn't end up killing a border agent or a

17

1    cop or an innocent civilian.  Because if we were tracing one of

2    the guns that you were involved with to a situation like that,

3    we'd be looking at a much different scenario here, and you'd be

4    looking at a much longer term of incarceration.  And you're

5    lucky because nothing you did caused that not to happen.  It is

6    just luck.

7            The second purpose of a sentence is to afford adequate

8    deterrence to criminal conduct.  I need to impose a sentence

9    that makes clear to you that you can't make mistakes like this.

10   You say it was dumb.  You say it was stupid.  Yeah, you need to

11   stop and think before you make decisions like this about the

12   implications about what could happen in the long-term.  And the

13   punishment has to be sufficient so that next time somebody asks

14   you to get involved in something, you stop and say what's --

15   where could this all lead?

16           The sentence also needs to make clear to others that

17   they can't do things like this.  And that if they do, there will

18   be consequences.

19           Third purpose of a sentence is to protect the public

20   from further crimes of the defendant.  So sometimes we have

21   defendants that come in here who have been convicted of crimes

22   and they are in some ways incapable of controlling themselves.

23   And unless they are locked up, they will be a danger to the

24   community, and they can't help themselves, they can't stop

25   themselves.  I don't think that's you.  I don't think that's an

1     issue here.

2          The final purpose of a sentence is to provide the

3     defendant with needed educational or vocational training,

4     medical care or other correctional treatment in the most

5     effective manner.  Again, I don't think you're in significant

6     need of rehabilitation.  You've shown yourself capable of being

7     a prosocial productive member of our community.  You don't have

8     drug addiction issues, doesn't appear you have any mental health

9     issues.  You may have the opportunity to take some vocational

10    training from the Bureau of Prisons.  We can all use that so

11    take some time and grow your mind, but I don't think this is a

12    major factor here.

13         The Court is also instructed to take into account

14    various aspects of the guidelines.  You know, the guidelines

15    recommend a higher sentence here, but the parties have agreed to

16    a lower sentence.

17         The guidelines also recommend that I try to avoid

18    unwarranted sentencing disparities.  That means that we did all

19    those calculations for the sentencing guidelines.  There are

20    other people out there who will be in a similar Criminal History

21    Category to you, similar offense level to you, and they should

22    be treated similar to you unless I've got a good reason to treat

23    you differently.

24         I think there are reasons to treat you differently.

25    So based on my review of the Presentence Report, the arguments

1    of counsel, I will impose the sentence agreed to by the parties.

2    42 months imprisonment on each count to run concurrently.  Upon

3    release from imprisonment, I will order Mr. Cobian placed on

4    supervised release for a term of three years.  While on

5    supervised release, I will order him subject to the conditions

6    recommended by probation in the Presentence Report, pages 27

7    through 32.  Mr. Steinle, have you reviewed those with

8    Mr. Cobian?

9            MR. STEINLE:  I have, Judge.  He has no objection to

10    them.

11            THE COURT:  Do you need me to read them to him on the

12    record?

13            MR. STEINLE:  No, you do not.  We've gone through them

14    word for word, Judge.

15            THE COURT:  The Court will waive a fine.  The

16    guidelines recommend a fine, but I don't think one is

17    appropriate here.  I would rather Mr. Cobian complete his period

18    of incarceration and then return to productive employment, earn

19    money, take care of himself, his family, save money for his

20    daughter for her future.  Adding a burden of a fine in this

21    situation I don't think would be appropriate.

22            I will order that Mr. Cobian pay the mandatory special

23    assessment of $100 per count because it is mandatory.  In the

24    end, I think the sentence is just.  It is sufficient but not

25    greater than necessary to comply with the purposes in the

1    sentencing statute.  It again is below the guidelines, but I

2    think it adequately accounts for the seriousness of the offenses

3    of conviction, and it sufficiently punishes Mr. Cobian for

4    violating the law.  The remaining counts of the indictment will

5    be dismissed as agreed to in the agreement.

6          Mr. Cobian, you've been convicted following a guilty

7    plea.  You have the right to appeal your conviction if you

8    believe your guilty plea was somehow unlawful or involuntary or

9    there was some other defect in the procedures.  You have a right

10   to appeal the sentence if you believe the sentence was imposed

11   illegally or contrary to law.

12         You should know appeals are subject to strict

13   deadlines.  Any notice of appeal must be filed 14 days of the

14   entry of judgement or within 14 days of the filing of a notice

15   of appeal by the Government.  If you ask, the clerk will prepare

16   and file a notice of appeal for you.  If you can't afford to pay

17   the cost of an appeal or for appellate counsel, you have the

18   right to apply for a waiver of the filing fee on appeal, and you

19   can also ask for court-appointed counsel on appeal.

20         Does the Government have any objection to voluntary

21   surrender at a time and date to be set by the Bureau of Prisons

22   not sooner than 60 days from today?

23         MR. LADWIG:  No.

24         THE COURT:  We'll allow voluntary surrender subject to

25   those conditions.  I will also recommend placement in a facility

1    as close to the Eastern District of Wisconsin as possible.  As

2    Mr. Steinle said, the Bureau of Prisons doesn't have to do what

3    I tell them, but I'm happy to recommend it.  Anything further

4    from anyone?

5            MR. LADWIG:  No.  Thank you.

6            MR. STEINLE:  No, Judge.  We've discussed obviously

7    the issue of appeal and because of the plea agreement in this

8    case, there are no appellate issues.  He understands that.  He

9    does not choose at this time to appeal his case.

10           THE COURT:  So Mr. Cobian, you've now been convicted

11   and you've now been sentenced for three federal offenses.  Those

12   are all --  These are all the result of things you did in the

13   past, dumb things as you said.  As you also said in apologizing

14   to everyone, you can't change that.  That's true.  What's done

15   is done, but you can make better choices going forward.  Control

16   your future actions.

17           I'm confident that if you focus, serve this time,

18   serve the --  take the consequences for the actions, decisions

19   you've made in the past and focus on making better decisions in

20   the future.  If you do that, you'll be able to put all of this

21   behind you, rejoin your family, rejoin your community and

22   continue to be a more productive person, prosocial person.

23           I think you're going to do that.  So good luck.

24           DEFENDANT:  Thank you.

25           THE COURT:  We're adjourned.

22

1          BAILIFF:  All rise.

2              (Whereupon proceeding was concluded.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E

I, SUSAN ARMBRUSTER, RPR, RMR, FCRR, Official Court Reporter for the United States District Court for the Eastern District of Wisconsin, do hereby certify that the foregoing pages are a true and accurate transcription of my original machine shorthand notes taken in the aforementioned matter to the best of my skill and ability.

Signed and Certified March 14, 2025.

/s/Susan Armbruster

Susan Armbruster

Susan Armbruster, RPR, RMR, FCRR
United States Official Reporter
517 E Wisconsin Ave., Rm 200A,
Milwaukee, WI 53202
Susan_Armbruster@wied.uscourts.gov